UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEBORAH C. PRUDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19-CV-859 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Deborah Pruden applied for disability benefits in 2016 alleging she was unable to work because of her breathing and mobility problems. An Administrative Law Judge ("ALJ") found that Ms. Pruden retained the capacity to perform work at the light exertional level and therefore denied her application. For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

**I. FACTUAL BACKGROUND**

Ms. Pruden filed an application for disability insurance benefits on May 26, 2016 claiming a disability onset date of April 13, 2016. (R. 15). Her application was initially denied on August 25, 2016 and upon reconsideration on November 15, 2016. *Id.* Ms. Pruden's application was again denied after an administrative hearing in front of an ALJ on June 25, 2018 at which she was represented by counsel. *Id.* The ALJ concluded that the Plaintiff had several medically determinable impairments that could reasonably be expected to cause hardships at work, but that she had a residual functional capacity ("RFC") that allowed her to perform the tasks associated with her past work and was thus not disabled within the meaning of the Social Security Act. (R. 19); *See* 20 C.F.R. 404.1520(f). The Appeals Council denied review of the ALJ's decision on

1

July 30, 2019, making the ALJ's decision the final determination of the Commissioner. (R. 1); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Pruden appeals the final determination to this Court under 42 U.S.C. § 405(g).

Ms. Pruden's application arises from what she argues are ongoing struggles with asthma, chronic obstructive pulmonary disease ("COPD"), obesity, a left knee replacement, and right carpal tunnel syndrome. (R. 179, 265-66, 275, 283, 349). She claims to have dealt with the health problems while working at prior jobs first in a library, then at an auditor's office, and finally at a school, but says she was increasingly not able to work because of her ailments. (R. 37-41). She was terminated from her jobs with the library and auditor and claimed her health problems played a role in her termination because she had coughing fits, had to take breaks to rest, and could not risk being around the public because of concerns about contracting infections. (R. 36-41). She stopped working as a teacher's aide at the school shortly before claiming disability, citing health concerns. (R. 37).

Throughout the relevant period between her alleged date of disability and the ALJ hearing, Ms. Pruden continued to exhibit symptoms of the underlying medical concerns she alleged. She underwent a cardiology exercise stress test in June 2016 that had to be terminated early after four minutes and 20 seconds because the exercise brought on difficulty breathing. The results of the test indicated that she had borderline functional capacity and "profound" difficulty breathing after exertion. (R. 479). A variety of other physical examinations over the two-year period also showed wheezing, an increased respiratory rate of 20 to 24 breaths per minute, decreased air entry to her lungs, and prolonged breathing phases. (R. 399, 401-02, 408). Ms. Pruden was also found to have leg and knee pain related to swelling and a prior left knee replacement, but her gait was deemed normal. (R. 277, 342, 350, 390, 395, 408, 421, 430, 511-

12). During the relevant period, Ms. Pruden was prescribed various treatments, including increased use of inhalers, use of a nebulizer, and prescriptions of drugs like prednisone to help with inflammation and Levaquin to treat bacterial infections that she contracted. (R. 265, 297, 313).

In April 2018, Ms. Pruden's treating physician Dr. Sandra Deausy met with her to discuss her disability application. (R. 511). Following the meeting, Dr. Deausy completed a treating source statement concluding that Ms. Pruden could stand for two hours at a time for a total of three to four hours in a workday, sit for two hours at a time, walk no more than a block, and lift and carry no more than five pounds. (R. 524-25). Dr. Deausy ultimately concluded in her statement that Ms. Pruden could not work on a sustained basis because of "chronic knee pain" and "severe shortness of breath." (R. 525).

Ms. Pruden and a vocational expert ("VE") testified at her hearing in front of the ALJ. Ms. Pruden testified that while she was let go from her previous employment as a teacher's aide and library clerk, she believes she could not have continued working those jobs because they required prolonged periods of standing, her cough prevented her from interacting with people, and because she was at an increased risk of getting sick when continuously exposed to the public. (R. 36-40). Additionally, she testified that she was missing work, particularly while working at the school, because her doctors had told her to avoid being around people and that her breathing worsens when she is exposed to things like dust, heat, chemicals, and fumes. (R. 37, 41, 43-44). Ms. Pruden also testified about her treatment regimen, stating she, among other things, uses her nebulizer "four times at least a day" and for 20 minutes at a time as well as two inhalers in the morning, one at night, and another inhaler as needed. (R. 43).

3

The ALJ posed three hypothetical questions to the VE during the hearing, each one including different limitations. (R. 55-57). In the decision, the ALJ assigned the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can perform only occasional postural activity, including climbing, balancing, stooping, kneeling, crouching, and crawling. She can occasionally reach overhead with the bilateral upper extremities. She can frequently handle and finger with the right upper extremity. She can tolerate occasional exposure to no more than moderate levels of environmental irritants, such as fumes, odors, dusts, or gases. She can never be exposed to poorly ventilated areas.

(R. 19). Based on the testimony of the VE and the assigned RFC, the ALJ found Ms. Pruden capable of working in the national economy.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

4

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Ms. Pruden offers two arguments in support of remand. She argues first that the ALJ failed to properly assess her symptoms under SSR 16-3p and, second, that the ALJ did not give proper weight to medical opinion evidence by discounting the opinion of Ms. Pruden's treating physician, Dr. Sandra Deausy, while giving substantial weight to the opinion of an agency reviewing physician, Dr. Mangala Hasanadka. The Court only addresses the second argument, as the Court agrees that the ALJ erred in evaluating the medical opinion evidence. That error requires remand and the Court need not address the remaining argument, which can be addressed by the parties on remand.

A treating physician's opinion on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20

C.F.R. § 404.1527(c); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).[1] An ALJ "must offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (citing 20 C.F.R. § 404.1527(d)(2)) (other citations omitted). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6) to determine the weight to give the opinion. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). The factors are: the physician's examining relationship with the plaintiff; the physician's treatment relationship with the plaintiff; the supportability by relevant evidence; the consistency of the medical opinion with the record as a whole; the physician's specialty; and any other factors tending to support or refute the opinion. *See* 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). If the ALJ discounts the treating physician's opinion after considering the factors, the Court must give deference to the ALJ's decision so long as he "minimally articulate[d] his reasons. *Elder*, 529 F.3d at 415.

Dr. Deausy practices in family medicine and treated the Plaintiff consistently between July 27, 2016 and April 25, 2018. (R. 382-83, 399-402, 514-15). She completed a treating source statement on April 25, 2018 detailing the Plaintiff's conditions and the limitations they cause on the Plaintiff's ability to work. In that statement, Dr. Deausy opined that Ms. Pruden can stand for two hours at a time with a total period of standing during a workday of between three and four hours. (R. 524). She added that Ms. Pruden can sit for two hours at a time but then must get up and move again. The limits on periods of standing and sitting are primarily affected by Ms. Pruden's shortness of breath and knee pain, according to Dr. Deausy. (R. 524). Dr. Deausy also opined that Ms. Pruden would have to lay down during the day because of fatigue from shortness of breath and that Ms. Pruden's limitations also keep her from being able to safely lift and carry

---

[1] While the treating physician rule has since been rescinded, it still applies to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Ms. Pruden filed her disability claim in May 2016.

more than five pounds during an eight-hour period. (R. 524-25). The physician concluded that these health problems make Ms. Pruden incapable of sustaining work on a continuing basis. (R. 525).

      The ALJ's decision to afford "little weight" to Dr. Deausy's treating source statement does not meet the level of analysis required under 20 C.F.R. § 404.1527(c). When an ALJ decides against giving a treating physician's opinion controlling weight, the ALJ is required to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(c). While the ALJ did consider the length of the Plaintiff's treatment with Dr. Deausy, noting the doctor had treated her since July 2016, the ALJ largely skips over the other factors choosing instead to focus on how Dr. Deausy's statement is generally "not consistent with the record." (R. 21). Without more guidance from the ALJ on how he evaluated the factors, the Court cannot be certain that he analyzed the factors at all. The Commissioner does not shed light on the unaddressed factors, simply arguing in his brief that "there is no requirement that the [ALJ] explicitly mention each factor in the written decision." [DE 16 at 6]. While that may be true, the absence of a discussion of the remaining factors means the ALJ failed to minimally articulate his reasons for assigning the treating physician statement "little weight" and that the ALJ's decision is inadequate and requires remand.

      Remand is also required because the ALJ's reasoning that he did provide in his decision is not supported by substantial evidence. To meet the substantial evidence standard, the Seventh Circuit requires that an ALJ create a "logical bridge" between the evidence in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The ALJ based his decision on his observations that "Dr. Deausy's own treating records show clear lung sounds or only scattered wheezes

bilaterally" and that Dr. Deausy recommended "routine and conservative treatment, including exercise." (R. 21). He also relied on Dr. Deausy's notes from one appointment in October 2017 indicating "that the claimant's shortness of breath symptoms were mild and her COPD was very well controlled." (R. 21).

The ALJ's error in focusing on this information is that he did so without placing it in proper context and without acknowledging or refuting key evidence in the record that undermined his conclusion. In making a proper RFC determination "an ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted).

The ALJ cites several of the Plaintiff's visits with Dr. Deausy in support of his determination that the doctor's opinion should be discounted. The first was a general medical examination in July 2016 that showed clear lung function but swelling in the Plaintiff's legs. (R. 382-83). Next, is an appointment in November 2016 where a physical examination found the Plaintiff wheezed and exhibited more musculoskeletal swelling in her legs (R. 402). The third is an examination from May 2017 that showed wheezing, an increased respiratory rate of 20 to 24 breaths per minute, and decreased air entry into the lungs. (R. 399). The next is an October 2017 visit where the Plaintiff reported mild and well-controlled symptoms. (R. 515). And the final visit the ALJ cites occurred in April 2018 when Dr. Deausy wrote a long summary of the Plaintiff's condition, some of which was incorporated into Dr. Deausy's treating source statement. (R. 511).

The ALJ's reliance on these records is problematic because he does not explain how the visits he cites discredit Dr. Deausy, engages in medical analysis on his own, and fails to address

9

records that do not support his decision. Each problem causes him to fall short of the substantial evidence threshold.

First, the ALJ provides no reason why the evidence from the examinations that the Plaintiff was dealing with wheezing, decreased lung function, and swelling in her legs does not support Dr. Deausy's conclusion. Dr. Deausy based her conclusion in the treating source statement primarily on the Plaintiff's shortness of breath and chronic knee pain. The physical findings in Dr. Deausy's examinations that the ALJ cites support the conclusion that the Plaintiff did have breathing and knee problems. The ALJ offers no explanation as to why those findings in fact discredit the limiting nature of the health problems the Plaintiff claims to have. Second, the Seventh Circuit has held that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ substituted his own opinion for medical opinion by theorizing that Dr. Deausy's recommendations for treatment were "routine and conservative" without explaining why or citing to medical evidence in the record that refers to the treatments as such. The lack of an explanation both about the persuasiveness of the specific appointments and why the treatments were routine and conservative, leave the ALJ's decision unsupported by substantial evidence.

Additionally, the ALJ appears to have selectively picked portions of the record to consider while ignoring other portions that undermine his conclusion. The statements from the October 2017 medical appointment the ALJ cites regarding Ms. Pruden's "mild" breathing symptoms and "very well controlled" COPD are both importantly in relation to Ms. Pruden's self-reported feelings at that one point in time. (R. 515) ("These are all really mild symptoms *for her at this time*.") (emphasis added). The ALJ's failure to make that distinction is important because the Seventh Circuit has emphasized that ALJs should consider the chronic nature of an

individual's condition as that condition can change over time. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). For example, a January 2018 appointment, just a few months after the October 2017 appointment the ALJ cited, led a doctor to conclude "possible chronic obstructive lung disease that *is not well controlled* is suggested to be present given [the Plaintiff's] medical condition and signs and symptoms." (R. 418) (emphasis added). The ALJ does not mention this appointment or explain why the October 2017 appointment that he cites carries more weight. The ALJ's failure to properly explain his putting weight behind the October 2017 appointment in light of negative reports in other appointments before and after that appointment, (R. 376, 401-02, 408, 417-18, 479), undermine his decision by indicating it is supported by less than substantial evidence.

The ALJ also leaves numerous other medical records within the overall record that support Dr. Deausy's conclusions unaddressed. On September 29, 2015, an examination on the Plaintiff indicated she had diminished breathing sounds and shortness of breath consistent with "COPD more so than asthma" that prompted the treating doctor to recommend that the Plaintiff use her inhaler more frequently. (R. 265). On March 16, 2016, an examination found "decreased breath sounds" with some rattling that supported the finding that she had chronic COPD with shortness of breath and an upper respiratory tract infection. (R. 297). On June 30, 2016, the Plaintiff underwent a cardiology exercise stress test that had to be terminated early after four minutes and twenty seconds because the exercise brought on difficulty breathing. (R. 479). The results of the stress test indicated to the doctor conducting the test that Pruden had borderline functional capacity and "profound" difficulty breathing after exertion on the treadmill. *Id.* On March 12, 2018, a physical examination showed prolonged breathing phases and diminished

11

breath sounds. (R. 408). Finally, on January 15, 2018, a physical examination showed globally diminished breathing sounds with scattered rattling in the lungs. (R. 417). The ALJ also, as previously discussed, did not explain away Dr. Deausy's physical examination findings in November 2016 and May 2017 that showed breathing trouble. (R. 399, 402). The ALJ's failure to address or refute any of these appointments and examination results, all of which contradict his decision that Dr. Deausy's treating statement "is not consistent with the record," (R. 21), means he has not built a logical bridge from the record to his conclusion and his decision should be remanded.

Finally, the ALJ assigned "substantial weight" to the opinions of Dr. Mangala Hasanadka, an agency doctor, based on what the ALJ found was her "thorough review of the medical evidence at the reconsideration level" and because she "has a comprehensive understanding of the Social Security disability program." (R. 21). However, the existence of a contradictory opinion of a non-examining physician does not overcome the opinion of a treating physician. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Additionally, the ALJ did not cite to any specific evidence supporting his conclusion that Dr. Hasanadka had conducted a thorough review of the medical record or that the doctor had a comprehensive understanding of the Social Security disability system. *See Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015) (criticizing an ALJ for giving "great weight" to state-agency reviewing physicians without explaining the physician's qualifications or specialties). Further problematic is that Dr. Hasanadka's "thorough" review of the medical evidence was done in November 2016, meaning she did not consider nearly half of the medical record that was eventually in front of the ALJ for his decision. (R. 87). The ALJ thus relied on the agency consultant's opinion instead of Dr. Deausy's without the support of substantial evidence.

Because the ALJ failed to properly weigh the medical opinion evidence of Ms. Pruden's treating physician, and because the ALJ did not adequately explain his conclusions, harmful error occurred and remand is therefore required. The Court recognizes that the RFC is a legal determination made by the ALJ, not a medical determination. However, the ALJ must consider all the relevant evidence in the record and evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection. *Golembiewski*, 322 F.3d at 917; *Zurawski*, 245 F.3d at 888. The Court also recognizes that an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371. But here, the ALJ's decision cannot stand because it lacks the required substantial evidentiary support and an adequate discussion of the issues. *See Lopez*, 336 F.3d at 539.

## V.  CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  October 28, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court

13